IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **Tyriek Newell** | : | |
| Plaintiff | : | |
| vs. | : | Case No. 26-cv-1240 |
| | : | |
| **City of Philadelphia** | : | |
| **Philadelphia Sheriff's Office** | : | |
| **John Does 1-10** | : | |
| Defendants | : | |

## Civil Complaint

1. Plaintiff, Tyriek Newell is an adult individual and resident of the Eastern District of Pennsylvania.

2. Mr. Newell brings this action under 42 U.S.C. § 1983 for violations of his right to Due Process of Law as guaranteed by the Fourteenth Amendment to the United States Constitution.

3. The City of Philadelphia is a Municipal Government existing under Home Rule Charter and is the owner of the real property known as the Philadelphia Family Court located at or about 1501 Arch Street in Philadelphia.

4. The Sheriff of Philadelphia is an office existing under the City of Philadelphia Charter and is a component part of the City of Philadelphia, a municipal government in the Commonwealth of Pennsylvania.

5. At all relevant times, Rochelle Bilal was the duly elected Sheriff of Philadelphia with years of experience as a law enforcement official and is sued here in her official capacity as an elected official and the head of the Sheriff's Office.

6. Among other things, the Sheriff of Philadelphia is responsible for budgeting her office, staffing and securing all Courthouses and Court Facilities, including but not

1

limited to, Philadelphia Family Court located at 1501 Arch Street.

7. John Does 1-10 are unknown deputies employed by the Sheriff's Department who were present at the time of Plaintiff's assault which is described in more detail below.

8. At all relevant times, all Defendants known and unknown knew that courthouses can be emotionally charged environments for all participants in the justice system and, especially in Philadelphia, that law enforcement personnel have struggled with, *inter alia*, violence, witness intimidation and other unlawful behavior occurring inside of Philadelphia Courthouses.

## Philadelphia Family Court

9. Plaintiff reincorporates all preceding paragraphs.

10. The Philadelphia Family Court is located at 1501 Arch Street in Philadelphia, Pennsylvania.

11. The building is a courthouse that houses judges and county offices related to the Family Division of the Philadelphia Court of Common Pleas.

12. Courthouses are unique in that travel to and presence in these buildings is not always optional and can in fact be mandatory when, for example, a person needs to transact business, is a party to a proceeding or has been subpoenaed as a witness.

13. At all times, the Philadelphia Family Court is secured by deputies from the Philadelphia Sheriff's Office.

14. The role of these deputies includes providing security for the building and to secure and transport any individuals who are in custody.

15. Among other things, deputies provide security at the entrances and exits,

inside of the courtrooms and in the hallways and other public areas.

16.     At the entrance to Philadelphia Family Court, the deputies operate metal detectors and x-ray scanning machines with the purpose of, among other things, preventing individuals from bringing firearms and other weapons inside of the Philadelphia Family Court (even those weapons and firearms which are possessed only for self-defense purposes).

17.     In addition to these measures, individuals entering Philadelphia Family Court are also subject to further search and inspection at the discretion of deputies providing security.

18.     Philadelphia policy as set forth in Section § 16-306 of the Philadelphia Code as promulgated by Philadelphia City Council and regulations enacted pursuant thereto by the Commissioner of Public Property prohibit anyone other than a law enforcement agent from entering a public building with a firearm or weapon.

19.     The City of Philadelphia enforces this policy through, *inter alia*, Sheriff Bilal and her deputies that work at the entrance to Philadelphia Family Court as described above.

20.     Deputies are trained to enforce this policy and do in fact enforce this policy by maintaining signage advising that firearms and weapons may not be brought into the Philadelphia Family Court, by operating the x-ray machine and metal detectors to ensure that weapons and firearms are not brought in by visitors and by conducting searches of visitors if there is reason to believe or suspect that a visitor is in possession of a firearm or weapon while entering or while inside of Philadelphia Family Court.

21.     As a result of the foregoing policies and specifically because individuals are

not permitted to possess weapons inside of Philadelphia Family Court, individuals entering into the facility are less able to protect themselves from attack, assault and other unlawful contact than they otherwise would be insofar as they are not permitted to bring items that can be used to deter, combat or ward off physical threats to their bodily security.

22. Indeed, the right to keep and bear arms is protected by the Second Amendment to the United States Constitution and both federal and state law recognize the right of individuals to possess and used firearms and weapons to protect themselves from among other things unlawful violence.

23. However (and regardless of the wisdom and legality of prohibiting weapons and guns inside of the Philadelphia Family Court), these rights and a person's ability to exercise these rights are severely curtailed when entering the Philadelphia Family Court.

24. Likewise, the ability of individuals to defend themselves from unlawful violence is severely curtailed when entering the Philadelphia Family Court.

25. That is, through the action of the City of Philadelphia and the Philadelphia Sheriff's Department, individuals traveling into the Philadelphia Family Court lose some of the liberty that they would otherwise have when not inside of a public building and are less able to act to protect themselves from harm than they otherwise would be when not inside of a public building.

26. Said differently, the City of Philadelphia and the Philadelphia Sheriff's Department – by virtue of these policies – impose limitations on the freedom of individuals visiting the Philadelphia Family Court to act on their own behalf.

27. Thus, by enforcing this policy, the City of Philadelphia and the Philadelphia Sheriff's Department created a special relationship between the City and those entering

courthouses.

28. Likewise, by enforcing this policy, the City of Philadelphia and the Philadelphia Sheriff's Department either create or enhance the degree of danger facing individuals entering City courthouses.

29. This, coupled with other facts and circumstances described in more detail below, creates a danger to those individuals who enter the Philadelphia Family Court or is increases the danger that otherwise already exists.

30. By virtue of both this special relationship and the created and/or increased danger that flows from the City and Sheriff's actions, the Due Process Clause of the Fourteenth Amendment imposes a duty on the City of Philadelphia and the Sheriff's Department to protect individuals from third party criminal acts.

### The February 2024 Assault of Tyriek Newell

31. Plaintiff reincorporates all preceding paragraphs.

32. On February 27, 2024, Plaintiff Tyriek Newell traveled from his home to the Philadelphia Family Court to attend court with his niece.

33. Mr. Newell, consistent with the above-referenced policies, presented himself at the security checkpoint, passed through security and satisfied one or more deputies from the Sheriff's Department that he was not in possession of any prohibited items.

34. Upon entering, Mr. Newell became subject to security policies referenced above thereby placing him into a special relationship with the City of Philadelphia.

35. In addition, when Mr. Newell complied with the security policies imposed by the Sheriff's deputies, his forced compliance created or enhanced a risk that he could be

assaulted and unable to completely or effectively protect himself from such an assault.

36. Mr. Newell traveled to the third floor of the courthouse.

37. On the third floor of the courthouse, two individuals later identified as Namir Hall and Shakeem Bruce began to menace and attack individuals who were either with Mr. Newell's party or in the general vicinity.

38. Said conduct took place in full view of one or more deputies that did not intervene or take any steps to calm the situation or prevent the situation from escalating into a physical altercation.

39. The incident became physical.

40. During the incident, Mr. Newell was struck by Mr. Hall, Mr. Bruce and/or another unknown individual on or about his body, including in his face and head.

41. Prior to his being struck, Sheriff's deputies – notwithstanding being present – did not intervene or protect Mr. Newell from this violent encounter.

42. As a result of this assault, Mr. Newell sustained serious injuries and lacerations to his head, face, jaw and cranium, suffered a concussion, lost consciousness, experienced temporary loss of vision and other injuries.

43. A substantial portion of the assault was recorded by a bystander and depicts Sheriff's Deputies electing against intervening or effectively addressing in the assault.

44. In this regard, the Sheriff's Deputies acted with deliberate indifference towards the health, welfare and bodily security of the Plaintiff.

45. Following this vicious assault, Messrs. Hall and Bruce were arrested by Philadelphia Police Officers and charged with, *inter alia*, Aggravated Assault in violation of 18 Pa.C.S. § 2702 and Conspiracy in violation of 18 Pa.C.S. § 903.

6

## Count 1: 42 U.S.C. § 1983

*Tyriek Newell v. City of Philadelphia, Philadelphia Sheriff's Office and Rochelle Bilal*

### Monell Liability/Due Process Violation

46. Plaintiff reincorporates all preceding paragraphs.

47. Sheriff Rochelle Bilal is a municipal policy maker as that term is used in connection with litigation filed pursuant to 42 U.S.C. § 1983.

48. As noted above, Sheriff Bilal in her official capacity is responsible for the hiring, training and deployment of deputies to the Philadelphia Family Court to attend to matters such as the security and well-being of those inside of the building.

49. As part and parcel of this authority, the Philadelphia Sheriff (or a Deputy acting on behalf of the Sheriff but subject to the Sheriff's ultimate approval) promulgates the policy or policies for securing the courthouse which includes, but is not limited to, the training of deputies, the number of deputies that are to work in at a courthouse at any given time, deputies' rate of pay, the tools and equipment that deputies are permitted to carry and use, the instances in which those tools and equipment may be used, policies that are designed to present violence from occurring inside of city courthouses, the emergency response procedures that are to be followed by deputies in the event of emergencies, procedures for deputies to follow when dealing with violent incidents, securing the premises and ensuring the safety of those who enter the premises.

50. Sheriff Bilal decides who to hire and how to train Sheriff's deputies.

51. Sheriff Bilal also decides the number of deputies to be assigned to any given floor of the Philadelphia Family Court and what specific duties for which said deputies are responsible.

52. Defendant Bilal, as policymaker with respect to the security and operation of the Philadelphia Family Court, acted with deliberate and/or reckless indifference to the safety and well-being of Mr. Newell and thereby was the driving force behind his injuries.

53. While violence in Philadelphia Courthouses has always been a concern, beginning in 2023, incidents involving violent acts, vandalism, threats, menacing behavior and other activity requiring a police response soared.

54. Due to the deteriorating situation, individuals inside of courthouses were placed at serious risk of being victimized in a violent or criminal interaction.

55. This notwithstanding, the Sheriff did not make changes necessary to ensure that citizens were protected inside of courthouses notwithstanding the physical ability to do so.

56. Numerous funded positions were not filled.

57. In addition, money originally earmarked for hiring and training new deputies was diverted to pay for executive positions and non-union office staff.

58. Despite being able to hire additional deputies or staff courthouses with additional deputies to address the increasing number of violent events occurring in City Courthouses, the Sheriff's Office decided not to do so.

59. While these policy decisions may not have been facially unconstitutional, they nevertheless amounted to deliberate indifference to the safety of citizens inside of courthouses including the Philadelphia Family Court.

60. It was the lack of staffing in the Philadelphia Family Court – a direct result of the Sheriff's policies – that was the driving force behind the injuries to Mr. Newell.

61. Had a sufficient number of deputies been available to secure the third floor

of Philadelphia Family Court on February 27, 2024.

62. The number of deputies assigned to and therefore available to secure the third floor was therefore a direct result of a policy decision of the Sheriff and was again the driving force between the violation of Mr. Newell's due process rights under the Fourteenth Amendment to the United States Constitution.

63. In other words, but-for the lack of staffing, the injuries to Mr. Newell would have been mitigated or would not have occurred at all.

64. Defendant Bilal, as policymaker with respect to the security and operation of Philadelphia Courthouses, acted with deliberate indifference to the safety of Mr. Newell and others like him coming to and transacting business inside of Philadelphia Courthouses.

65. By allowing for insufficient security in the Philadelphia Family Court while at the same time restricting or imposing limitations on Mr. Newell's freedom to act on his wn behalf, the defendants violated Mr. Newell's due process rights.

66. That is, coupled with the increasing instances of violence, the rules and regulations limiting items individuals may bring into courthouses, i.e., items that could be used for personal protection if necessary, the policy at issue was certain to lead to injuries such as the injury at issue in this case and, when it did, amounted to a blatant violation of Mr. Newell's due process rights.

**WHEREFORE**, and for all of the foregoing reasons, Plaintiff Tyriek Newell seeks judgment against the Defendants the City of Philadelphia, The Philadelphia Sheriff's Department and Rochelle Bilal for compensatory damages, punitive damages, costs, interest and any other amount recoverable under the law.

**Count 2: 42 U.S.C. § 1983**

*Tyriek Newell v. City of Philadelphia, Philadelphia Sheriff's Office and Rochelle Bilal*

**Failure to Train/Due Process Violation**

67. Plaintiff reincorporates all preceding paragraphs.

68. All deputies that are hired by the Philadelphia Sheriff's Office must undergo training before they begin working as a deputy for the Philadelphia Sheriff's Office.

69. The training at issue includes classes on law enforcement but does not include training on responding to violent outbreaks in courthouses.

70. In the alternative, the training on this subject is minimal and does not adequately prepare deputies for their jobs.

71. Due to both the historical and rapidly-increasing number of incidents inside of Philadelphia courthouses involving violence which were discussed above, the necessity of appropriately training deputies to address and respond to violent confrontations would have been and was in fact obvious to the Defendants.

72. Indeed, and as alleged above, courthouses are often emotionally charged environments wherein real individuals come into contact with the justice system.

73. In addition, the Defendants knew that at all relevant times the security policies discussed above, *i.e.*, x-ray machines, metal detectors, searches, imposed limitations on the freedom of individuals inside of courthouses to act on their own behalf and fully protect themselves from violent attacks or assaults.

74. Especially in light of the increasing number of violent incidents in 2023 noted above, the need to appropriately train deputies become ever more apparent.

75. Sheriff Bilal knew without question that her deputies would likely come into

contact with violence inside of courthouses.

76. This knowledge was derived both from her prior experience as a police officer, her experience as Sheriff, the general knowledge of issues in Philadelphia Courthouses that date back at least until the 1990s as well as the explosion of instances of violence in 2023.

77. Notwithstanding this knowledge, the training mandated for deputies did not include an adequately robust program for addressing issues such as violence in the Courthouse.

78. The deputies were not trained in appropriately and effectively responding to violent outbursts or violent confrontations.

79. The training did not adequately equip the deputies to prevent or stop a violent attack from occurring.

80. Situations involving violent encounters are fraught with uncertainty and often require that individuals responding to such situations make difficult decisions over short durations of time.

81. In addition, people have been victimized in the past at courthouses and were injured as a result of courthouse violence that was inadequately prevented or addressed by deputies.

82. Failing to intervene is likely to have disastrous consequences including, but not limited to, serious bodily injury and harm to citizens.

83. Failing to intervene in a meaningful and effective manner is also liked to have disastrous consequences including, but not limited to, serious bodily injury and harm to citizens.

84. Further, and because of both the special relationship and the danger caused/increased by the security policy described above, said failure to intervene and/or properly intervene is likewise wont to result in violations of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

85. Yet, deputies were not sufficiently trained on addressing, responding to and/or handling these types of situations.

86. Indeed, and as seen in the video of the assault, a deputy attempts to use a plastic water bottle to intervene in the violent attack rather than some other method that would have been far more effective, an action that falls far below the type of response needed in the situation.

87. In addition, it also seems that deputies failed to respond in a timely fashion and in a manner designed to save the victims from sustaining any further injuries at the hands of the third party assailants.

88. This response betrays an insufficient amount of training and preparedness on the part of the deputies staffing and securing the courthouse.

89. Again, insufficiently training deputies is likely to result both in serious injuries to individuals as well as violations of their due process rights.

90. The lack of adequate training as described above was the driving force behind the injuries sustained by Mr. Newell.

**WHEREFORE**, and for all of the foregoing reasons, Plaintiff Tyriek Newell seeks judgment against the Defendants the City of Philadelphia, The Philadelphia Sheriff's Department and Rochelle Bilal for compensatory damages, punitive damages, costs, interest and any other amount recoverable under the law.

### Count 3: 42 U.S.C. § 1983

*Tyriek Newell v. John Does 1-10*

**Due Process Violation**

91. Plaintiff reincorporates all preceding paragraphs.

92. During the assault in question, John Does 1-10 failed to provide protection to Mr. Newell.

93. In light of the special relationship alleged above, this amounted to a violation of Mr. Newell's rights under the Fourteenth Amendment to the United States Constitution.

94. In light of the danger caused and/or increased as described above, this amounted to a violation of Mr. Newell's rights under the Fourteenth Amendment to the United States Constitution.

**WHEREFORE**, and for all of the foregoing reasons, Plaintiff Tyriek Newell seeks judgment against Defendants John Does 1-10 for compensatory damages, punitive damages, costs, interest and any other amount recoverable under the law.

Date: February 25, 2026

Respectfully submitted:

*Jason Javie*
_____
**JASON JAVIE**
**Attorney for Tyriek Newell**
Pa. Attorney I.D. No. 309840
Two Penn Center, Suite 1815
1500 John F. Kennedy Boulevard
Philadelphia, Pennsylvania 19102
(215) 563-7642 (Office)
(267) 800-3600 (Direct)
(215) 563-9145 (Fax)
<jason.javie@crllaw.com>